Christopher D. Sullivan, SBN 148083
csullivan@mcgranegreenfield.com
MCGRANE GREENFIELD, LLP
1 Ferry Bldg Ste 220
San Francisco, CA 94111
Telephone: (415) 283-1776

Tanya L. Forsheit, SBN 192472
tforsheit@proskauer.com
PROSKAUER ROSE LLP
2049 Century Park East, 32nd Floor
Los Angeles, California 90067-3206
Telephone: (310) 557-2900
Facsimile: (310) 557-2193

Steven M. Bauer*
sbauer@proskauer.com
Kimberly A. Mottley*
kmottley@proskauer.com
PROSKAUER ROSE LLP
One International Place
Boston, Massachusetts 02110-2600
(617) 526-9600
**pro hac vice* applications pending

Attorneys for Plaintiff
MKS INSTRUMENTS, INC.

# UNITED STATES DISTRICT COURT

# NORTHERN DISTRICT OF CALIFORNIA

# SAN JOSE DIVISION

| | |
|---|---|
| MKS INSTRUMENTS, INC.,<br><br>Plaintiff,<br><br>vs.<br><br>NEW POWER PLASMA and DOES 1-10, inclusive,<br><br>Defendants. | CASE NO. C09-02297-MEJ<br><br>**NOTICE OF MOTION FOR TEMPORARY RESTRAINING ORDER AND TO SET SHOW CAUSE HEARING RE: PRELIMINARY INJUNCTION; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Date:   June 18, 2009<br>Time:   10:00 a.m.<br>Location:   Courtroom B<br>           United States Courthouse<br>           450 Golden Gate Ave.<br>           San Francisco, CA 94102 |

TO DEFENDANT HEREIN AND ITS ATTORNEYS OF RECORD, IF ANY:

PLEASE TAKE NOTICE that on June 18, 2009 at 10:00 a.m., or as soon as the matter can be heard before the Honorable Magistrate Judge Maria-Elena James, in Courtroom B of the United States Courthouse, located at 450 Golden Gate Ave., San Francisco, California 94102, Plaintiff MKS Instruments, Inc. ("MKS") respectfully will and hereby does move, pursuant to Federal Rule of Civil Procedure 65(a) and (b), and Local Rules 65-1 and 65-2, for

1.  a temporary restraining order enjoining defendant New Power Plasma Co., Ltd. ("NPP"), NPP's officers, agents, servants, employees, and attorneys, and any other persons who are in active concert or participation with any of the foregoing persons, pending hearing on an order to show cause re preliminary injunction, from:

   a.  testing, undertaking a qualification process, or experimenting with and any other use of NPP low-field toroidal reactive gas sources in the United States; and

   b.  removing NPP low-field toroidal reactive gas sources, or any other evidence relevant to such products, from their current locations in the United States; and

2.  an order setting a hearing to show cause, at the earliest possible date, why the Court should not issue a preliminary injunction on the terms set forth in (1), above.

The patents in suit have been adjudged, after jury trial, as infringed and not invalid. NPP is new to the U.S. market, and immediate injunctive relief is necessary here to prevent defendant NPP from irreparably harming MKS during the pendency of this case by having the product tested and qualified in the United States for sales outside the United States. NPP has recently placed its accused products at MKS's biggest U.S. customer, so that that customer can qualify these products for use with its products outside the U.S. This use in the U.S. infringes MKS's patents. If NPP's accused products are approved through this testing by MKS's customer, MKS's business will suffer severe and irreparable harm, because MKS may not be able to recover a remedy at law for sales beyond the reach of the U.S. patent laws. MKS needs an immediate injunction against the current U.S. use of NPP's accused products to avoid this irreparable harm.

1   Because NPP also apparently intends to remove the accused products from the reach of
2   this Court by recalling them to Korea after the qualification process concludes, but before MKS
3   gets access to them in the course of discovery, a further injunction ordering the products to remain
4   where they presently are is warranted.  Of course, once these products are outside the jurisdiction
5   of this Court, MKS will likely be unable to inspect and test them to gather proof of infringement
6   for trial.
7   This motion will be and is based upon this Motion, the accompanying memorandum of
8   points and authorities, the complaint in this action (attached hereto as Appendix A), the
9   declarations of Paul Loomis and Kimberly A. Mottley, the concurrently-filed proposed order,
10  Federal Rules of Civil Procedure 65(a) and (b), and Local Rules 65-1 and 65-2, and such further
11  evidence and arguments as may be presented at the hearing.

DATED: June 16, 2009

Christopher D. Sullivan
MCGRANE GREENFIELD, LLP

Tanya L. Forsheit
Steven M. Bauer*
Kimberly A. Mottley*
PROSKAUER ROSE LLP

*pro hac vice applications pending

/s/ -- Tanya L. Forsheit
_____
Tanya L. Forsheit

Attorneys for Plaintiff
MKS INSTRUMENTS, INC.

2

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    SUMMARY OF ARGUMENT**

Plaintiff MKS Instruments, Inc. ("MKS") respectfully moves this Court for a temporary restraining order requiring defendant New Power Plasma Co., Ltd. ("NPP") to cease its infringing use of the accused products in the United States, and enjoining NPP from removing the accused devices (or other evidence) from the United States. MKS further requests that this matter be set for a show cause hearing, prior to the expiration of the temporary restraining order if it is issued, to address whether the temporary injunctive relief should remain in place throughout the pendency of this action.

MKS's patents at issue in this case have been held valid and found infringed in two separate jury trials, and are a primary reason for MKS's dominance in the market for low-field toroidal reactive gas sources – devices used in the semiconductor industry for cleaning chambers used in the manufacture of computer chips. For about the last 10 years, the only two U.S. companies offering such products in the United States have been MKS and one limited licensee of its patents, and MKS's sales of these products in each of 2007 and 2008 have exceeded $50 million.

Recently, defendant NPP, a Korean competitor, has taken steps to attack MKS's market position. MKS has learned that NPP has sent some number of units for test and evaluation purposes to MKS's largest U.S. customer, so that this customer can qualify these products for use with its products. At this moment, the qualification process is underway in Santa Clara. It is almost certain that this qualification process will be completed long before this case reaches trial on the merits, and the harm done – qualification to permit NPP to sell these products throughout the world – will be irreparable because those world-wide sales may not be subject to U.S. patent laws. The need for immediate injunctive relief here is urgent, as MKS does not know how long the qualification process has already been underway – thus, every day counts. If NPP's accused infringing products are qualified, MKS's business will suffer severe and irreparable harm, including placing between 50-75% of its market share in these products at risk, with no hope of remedy at law for such a loss.

1

MKS'S MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND TO SET SHOW CAUSE HEARING RE: PRELIMINARY INJUNCTION
Case No. C 09-02297

MKS needs an injunction barring ongoing use of NPP's accused products now, and throughout the pendency of this action, to avoid this irreparable harm.

Furthermore, through correspondence, it appears that NPP also intends to flee the reach of this Court with what will likely be the most critical evidence in this case – the accused products – by recalling them back to Korea after the qualification process concludes, but before MKS obtains access to them through discovery.  Once these products are outside the jurisdiction of this Court, MKS will likely be unable to inspect and test them to gather proof of infringement for trial.

At bottom, all four factors weighed in assessing the propriety of injunctive relief favor MKS.  MKS is likely to succeed on the merits of its patent infringement claims – the patents already have been found valid and infringed in a jury trial.  The irreparable harm absent the requested injunction would be severe – the efforts made here in the U.S. now are intended to damage MKS's world-wide sales outside the reach of the U.S. patent law.  NPP stands to lose little if the requested injunctive relief is granted, and the public interest in preventing foreign companies from violating U.S. patent laws by using the U.S. to test and qualify products for sale outside the U.S. is manifest.

## II.     STATEMENT OF FACTS

### A.     The Parties and Patents at Issue

MKS is a worldwide leader in the design, development, manufacture, and support of high performance reactive gas modules and power supplies for semiconductor device manufacturing, among other markets.  Defendant NPP is a South Korean company that holds itself out as a competitor of MKS in the field of remote plasma generators.  Defendants Does 1 through 10 (the "Doe Defendants") are the unknown person(s) who have acted in active concert or participation with NPP as to the allegations raised in MKS's complaint.

MKS is the owner of the two patents asserted in this litigation.  U.S. Patent No. 6,150,628 (the "'628 Patent") discloses a method and apparatus which use a plasma to produce a reactive gas which is used, principally, for cleaning the interior of semiconductor processing chambers.  (*See* Declaration of Kimberly A. Mottley, Esq. ("Mottley Decl.") submitted herewith, Ex. 1.)

2

The '628 Patent has been tried to verdict in two prior infringement litigations.  <u>MKS Instruments, Inc. v. Advanced Energy Systems, Inc.</u>, D. Del. (C.A. No. 00-1004-JJF and C.A. No. 03-469-JJF).  In both cases, this Patent was adjudged valid and infringed, and the court entered permanent injunctions against future infringement of this patent. (Mottley Decl., Exs. 2 - 5.)

As a result of these litigations, MKS has essentially an exclusive market share in the United States (the only other competitor in the U.S. market being a company to which MKS has granted a very limited license).  In the United States, no other company is licensed under these patents, and no other company competes with MKS for sales of these products.  (*See* Declaration of Paul Loomis ("Loomis Decl.") submitted herewith, ¶3.)

MKS has corresponding issued patents in Japan and Europe that similarly protect this product.  NPP has sold reactive gas generators in countries in which MKS has no issued patents corresponding to the '628 Patent, such as Korea, and MKS has had to live with that.  But now, MKS finds that NPP, either alone or in concert with the Doe Defendants, has imported into the United States a number of low-field toroidal reactive gas generators in order to qualify them for use on equipment sold by MKS's biggest customer (the "Customer").  (Loomis Decl., ¶¶4-6; Mottley Decl., Ex. 15.)

The qualification process is currently underway at the Customer's facility in Santa Clara, California.  (Loomis Decl., ¶7.)  If this ongoing U.S. process is completed, and the NPP product is qualified by the Customer, MKS is likely to experience significant lost sales and market share outside the United States – and outside the reach of the U.S. patent laws, as the Customer's products could be shipped directly from Korea to locations around the world to third parties who could then install an infringing NPP product on-site.

Upon learning of the ongoing U.S. qualification process discussed above, MKS promptly wrote to NPP on April 22, 2009, asserting its patent rights and demanding that NPP cease and desist importing and using infringing technology in the United States.  NPP responded on April 27, 2009, requesting a specific analysis of the alleged infringement, and stating that NPP would put its U.S. counsel in touch with MKS's U.S. counsel no later than May 27, 2009.  MKS received

3

1  no further contact from NPP before May 27, 2009, and to date has never been contacted by any

2  U.S. counsel for NPP.  (Mottley Decl., ¶9 & Exs. 6 & 7.)

3       Because of the imminent harm if the qualification process were to be completed, MKS

4  filed the current action on May 22, 2009.  MKS sent NPP a courtesy copy of the complaint on

5  May 26, 2009.  (Mottley Decl., Ex. 8.).  Formal service will be accomplished through the Hague

6  Convention, which can take several months.

7       **B.**    **NPP Agreed to Recall All Products from U.S., and Then Reneged.**

8       On May 28, 2009, NPP wrote to MKS stating that it had "decided to not enter into business

9  in U.S. market at this time" and further stating that "products in U.S., if any, will be recalled."

10  (Mottley Decl., Ex. 9.)

11       MKS immediately responded on May 28, 2009, with a letter in which it sought certain

12  further affirmations, including, *inter alia*, confirmation that NPP's promised recall of its products

13  in the U.S. would be completed by June 5, 2009, and asking for a response by June 1, 2009

14  confirming this.  (Mottley Decl., Ex. 10.)

15       On June 1, 2009, NPP sent MKS a three sentence letter stating that it needed more time for

16  a response, and providing no date by which MKS could expect that response.  Again, MKS

17  immediately responded on June 1, 2009, reiterating that this case is a matter of urgent concern to

18  MKS, and that MKS could not wait indefinitely for a response to its May 28, 2009 letter; MKS

19  asked for that response by June 5, 2009.  Again, on June 5, 2009, NPP wrote seeking more time

20  without providing any date by which MKS could expect to get a substantive response to its May

21  28, 2009 letter.  (Mottley Decl., Exs. 11 - 13.)

22       On June 8, 2009, MKS wrote to NPP again reiterating that it could not put this litigation on

23  hold indefinitely awaiting further assurances from NPP, and asked for a response by June 12,

24  2009, including at least confirmation that the NPP product recall from the U.S. had been

25  completed.  (Mottley Decl., Ex. 14.)

26       On June 12, 2009, NPP wrote to MKS, apparently changing its position on recall of

27  products from the U.S.  NPP stated that, while NPP has decided not to enter into business in the

28

4

MKS'S MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND TO SET SHOW CAUSE
HEARING RE: PRELIMINARY INJUNCTION
Case No. C 09-02297

1  U.S. market at this time, it had provided NPP devices to the Customer for "an experiment" (the
2  qualification process), and further stating that "NPP at all times retained title and ownership to the
3  experimental samples" and that "these experimental samples will be returned to NPP," presumably
4  at the conclusion of the qualification process.  Apparently, NPP thinks that as long as it retains
5  ownership of infringing products being used in the United States, and subsequently recalls them
6  out of the United States, that does not constitute infringement.  (Mottley Decl., Ex. 15.)

7  Not only did NPP's representations not resolve MKS's concerns driving the present
8  litigation (as discussed above, the critical harm is in the qualification process itself), but this letter
9  gave MKS further concern – that any U.S. discovery in the present litigation might be thwarted by
10 NPP's intention to remove from the jurisdiction of this Court the very units MKS will want to test
11 later in the litigation in order to prove its case.  Hence, MKS files the present motion for injunctive
12 relief.

## III.   BRIEF SUMMARY OF THE LAW ON INJUNCTIVE RELIEF

The Federal Rules permit a court to enter a temporary restraining order upon a clear showing that "immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard."  FED. R. CIV. P. 65(b)(1)(A).  In patent cases, the factors which a court weighs in ruling on a motion for temporary restraining order are the same as those weighed in ruling on a request for a preliminary injunction against an accused infringer.  *See Syntex (USA) LLC v. Apotex, Inc.*, Nos. C 01-02214 MJJ, C 05-02116 MJJ, 2006 WL 1390435, at *1 (N.D. Cal. May 18, 2006).  The Federal Circuit characterizes its analysis of the propriety of a preliminary injunction as a balancing of four factors: (1) likelihood of success on the merits; (2) irreparable harm; (3) the balance of hardships; and (4) the public interest.  *Id*.  *See also Hybritech Inc. v. Abbot Labs.*, 849 F.2d 1446, 1451 (Fed. Cir. 1988).

Though the Court must evaluate all of the factors, the first two factors – likelihood of success on the merits and irreparable harm – are the factors accorded the most weight in the analysis.  *See Hybritech*, 849 F.2d at 1457.  Although the Federal Circuit reviews all four factors, it has noted with approval Ninth Circuit precedent stressing "the importance of the equitable

5

MKS'S MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND TO SET SHOW CAUSE HEARING RE: PRELIMINARY INJUNCTION
Case No. C 09-02297

factors," and the sliding scale described in *Perfect 10, Inc. v. Amazon.com, Inc.*, 487 F.3d 701, 713-14 (9th Cir. 2007). *Abbott Labs,* 544 F.3d at 1367. Consequently, a court may properly enter an injunction when the merits "are close," provided that a strong showing has been made on the equities and irreparable harm. *See Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1345 (Fed. Cir. 2003).

## IV. ARGUMENT

### A. MKS is Likely to Succeed on the Merits of its Infringement Allegations.

In patent cases, likelihood of success on the merits requires a two-step analysis -- "the patentee must show that, in light of the presumptions and burdens applicable at trial, it will likely prove that the alleged infringer infringes the asserted claims of the patent and that the patent will likely withstand the alleged infringer's challenges to its validity." *Abbott Labs.,* 544 F.3d at 1372 (internal citations omitted).

#### 1. Validity of MKS's '628 Patent.

To combat a restraining order, NPP would need to show that it will be able to prove invalidity of each asserted claim of each asserted patent by clear and convincing evidence. *See Oakley Inc. v. Sunglass Hut Int'l*, 316 F.3d at 1339. This is highly unlikely, as the '628 Patent is presumed valid by statute and the '628 Patent, and Claim 1 in particular, has been adjudged valid in two separate jury trials involving MKS's biggest competitor – clearly, someone with an interest in invalidating the patent if it were possible. *See* 35 U.S.C. § 282; Mottley Decl., Exs. 2 & 4. Prior adjudications of a patent's validity strengthen the presumption of validity in the context of requests for injunctive relief. *Hybritech*, 849 F.2d at 1452.

#### 2. Infringement of MKS's '628 Patent.

With respect to infringement, MKS must show it will most likely be able to prove, by a preponderance of the evidence, that NPP "makes, uses, offers to sell, or sells any patented invention, within the United States, or imports into the United States any patented invention during the term of the [MKS Patents]." 35 U.S.C. § 271(a). To succeed on a claim for infringement, MKS only needs to show that one of its claims asserted in the litigation is likely to

6

MKS'S MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND TO SET SHOW CAUSE HEARING RE: PRELIMINARY INJUNCTION
Case No. C 09-02297

be infringed.  As set forth in the attached declaration of Paul Loomis, MKS's General Manager – ASTeX Product Group, he has inspected an NPP accused product and confirmed the presence of each element of Claim 1 of the '628 Patent in NPP's accused product.  (Loomis Decl., ¶¶ 8-10.)

### B. MKS Will Be Irreparably Harmed Without an Immediate Injunction.

In the analysis of the irreparable harm factor, "[i]t is well-settled that, because the principal value of a patent is its statutory right to exclude, the nature of the patent grant weighs against holding that monetary damages will always suffice to make the patentee whole." *Hybritech*, 849 F.2d at 1456-57.  Thus, in patent cases, while irreparable harm cannot be conclusively presumed, a finding that other remedies will suffice absent an injunction goes against the nature of a patentee's exclusionary right.  Regardless of presumptions, here, the evidence strongly supports a finding that MKS will be irreparably harmed if no injunction is granted.

The critical risk to MKS if NPP's qualification process is completed is the potential drastic decrease in its _non-U.S._ market share, leaving MKS with no remedy at law to make it whole for that change in market position.  Loss of market position is strong evidence in support of a finding of irreparable harm, weighing in favor of injunctions.  *See e.g.*, *Abbott Labs.*, 544 F.3d at 1361-62; *Canon, Inc. v. GCC Int'l Ltd.*, 263 Fed. Appx. 57, 62 (Fed. Cir. 2008); *Purdue Pharma LLP v. Boehringer Ingelheim GmbH*, 237 F.3d 1359, 1367-68 (Fed. Cir. 2001).

Without an injunction, it is almost certain that the qualification process will be completed before adjudication of this matter on the merits.  While it can vary, typically such processes take between four and six months to complete.  (Loomis Decl., ¶ 11.)  MKS does not know how long the qualification process has already been underway – thus, every day counts and the need here is urgent.

As discussed in the facts recounted above, if the Customer completes qualification of NPP's accused infringing product for use in the Customer's OEM products sold to its customers, MKS stands to lose extensive revenue and a large portion of its market share.  Basically, MKS's largest customer would then be able to ship its products abroad to third parties without first purchasing one of MKS's low-field toroidal reactive gas generators to incorporate therein, and

7

1  those third parties would then be able to incorporate the accused infringing NPP products
2  potentially into the Customer's product with no legal ramifications, in countries in which MKS
3  does not have patent rights corresponding to the '628 Patent.
4      The impact on MKS's business if it lost these sales of its low-field toroidal reactive gas
5  generators to its largest customer would be severe and extensive.  MKS estimates that the
6  Customer ships 30-40% of its products abroad to countries in which MKS does not have foreign
7  patents related to the '628 Patent and its progeny.  This would account for 50-75% of MKS's sales
8  to the Customer which would be put at risk.  This product generates the second highest revenues
9  of all of MKS's hundreds of products; MKS's sales of these products in each of 2007 and 2008
10 exceeded $50 million. (Loomis Decl., ¶¶ 12-14.)
11     As to the second aspect of MKS's requested injunctive relief, MKS asks this Court to
12 prevent NPP from removing from the United States the accused infringing products and other
13 evidence relevant to its infringing use of the accused products.  As detailed above, in its June 12,
14 2009 letter, NPP explicitly stated its intention to reclaim those units being used in the qualification
15 process by the Customer, presumably after that qualification process is complete.  (Mottley Decl.,
16 Ex. 15.)
17     Testing of the accused infringing devices – specifically, those devices on-site at the
18 Customer – will be a critical piece of discovery needed in the case, likely involving MKS's
19 expert(s) who will then testify at trial as to infringement.  If NPP removes these units, or other
20 evidence relevant to its infringing use, from the United States before MKS gets the opportunity to
21 conduct this detailed testing and complete discovery, the harm to MKS's ability to prove its case
22 could be severe, as NPP may deny that any other NPP product that MKS's experts test is
23 somehow different than those which were used by the Customer.  That potential harm to MKS's
24 case can not be remedied by monetary means.
25     **C.**    **The Balance of Hardships Strongly Favors MKS.**
26     In assessing the balance of hardships between the parties, "[t]he district court must balance
27 the harm that will occur to the moving party from the denial of the injunction with the harm that
28

8

MKS'S MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND TO SET SHOW CAUSE
HEARING RE: PRELIMINARY INJUNCTION
Case No. C 09-02297

the non-moving party will incur if the injunction is granted." *Hybritech*, 849 F.2d at 1457. Here, as detailed above, there is a strong likelihood that MKS will be irreparably harmed absent an injunction. On the other hand, NPP stands little to lose by having to wait for adjudication on the merits before it moves forward with the ongoing qualification process. The balance of hardships here tips in MKS's favor.

### D. The Public Interest Favors Granting Injunctive Relief.

Finally, as "strong public policy favor[s] the enforcement of patent rights," the final factor of "public interest" weighs in favor of an injunction here. *Rosen Entm't Sys. LP v. Icon Enters., Inc.*, 359 F. Supp. 2d 902, 912 (C.D. Cal. 2005). Furthermore, the public interest in preventing foreign companies from improperly benefiting by using the U.S. to test and qualify products, and then selling those products outside the U.S., and outside the reach of U.S. law, is manifest.

## V. CONCLUSION

For the foregoing reasons, MKS requests that this Court issue a temporary restraining order, and set this matter for a show cause hearing prior to the expiration of that temporary restraining order to address whether that injunctive relief should remain in place throughout the pendency of this action, as set forth in the proposed order filed with MKS's Motion.

DATED: June 16, 2009

Christopher D. Sullivan
MCGRANE GREENFIELD, LLP

Tanya L. Forsheit
Steven M. Bauer*
Kimberly A. Mottley*
PROSKAUER ROSE LLP

**pro hac vice* applications pending

/s/ -- Tanya L. Forsheit
               Tanya L. Forsheit

Attorneys for Plaintiff
MKS INSTRUMENTS, INC.

9

MKS'S MEMORANDUM IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING order AND TO SET SHOW CAUSE HEARING RE: PRELIMINARY INJUNCTION
Case No. C 09-02297