1  Christopher D. Sullivan, SBN 148083
   csullivan@mcgranegreenfield.com
2  MCGRANE GREENFIELD, LLP
3  1 Ferry Bldg Ste 220
   San Francisco, CA 94111
4  Telephone:  (415) 283-1776
   Facsimile:  (415) 283-1777
5

6  Tanya L. Forsheit, SBN 192472
   tforsheit@proskauer.com
7  PROSKAUER ROSE LLP
   2049 Century Park East, 32nd Floor
8  Los Angeles, California 90067-3206
   Telephone: (310) 557-2900
9  Facsimile: (310) 557-2193

10 Steven M. Bauer*
11 sbauer@proskauer.com
   Kimberly A. Mottley*
12 kmottley@proskauer.com
   PROSKAUER ROSE LLP
13 One International Place
   Boston, Massachusetts 02110-2600
14 Telephone: (617) 526-9600
15 Facsimile: (617) 526-9899
   *admitted *pro hac vice*
16
   Attorneys for Plaintiff
17 MKS INSTRUMENTS, INC.

18                    **UNITED STATES DISTRICT COURT**

19                   **NORTHERN DISTRICT OF CALIFORNIA**

20                       **SAN FRANCISCO DIVISION**

| | |
|---|---|
| 21  MKS INSTRUMENTS, INC., | CASE NO. C09-02297-JSW |
| 22              Plaintiff, | **MKS'S REPLY IN SUPPORT OF MOTION FOR TEMPORARY** |
| 23         vs. | **RESTRAINING ORDER AND TO SET SHOW CAUSE HEARING RE:** |
| 24  NEW POWER PLASMA and DOES 1-10, inclusive, | **PRELIMINARY INJUNCTION** |
| 25              Defendants. | Date:     June 24, 2009<br>Time:    11:00 a.m. |
| 26 | Location:   Courtroom 11<br>            United States Courthouse |
| 27 | 450 Golden Gate Ave.<br>San Francisco, CA 94102 |
| 28 | |

MKS Instruments, Inc. ("MKS") submits this short reply brief to respond to defendant New Power Plasma's ("NPP") opposition and the arguments made therein.

Most importantly, NPP's opposition raises no substantive issue regarding MKS's likelihood of success on the merits, despite NPP's having known of MKS's infringement allegations for two months. Thus, for purposes of this Motion, the Court can conclude that MKS has met its burden of showing a likelihood of success on the issues of patent infringement and validity.

NPP's opposition seems to be that even if its product infringes, it should be allowed to continue using it in the United States for a short while, because 1) the fact that MKS tried to resolve this matter short of court involvement and did not immediately file this Motion when NPP led MKS to believe that resolution was possible means that there is really no urgency here, and 2) the fact that NPP intends to hustle the products out of the country after it completes its U.S. qualification and testing should be enough to end this case.

Neither defense is, however, supported by law. NPP's U.S. activity *is* patent infringement, even if only for "experimental" purposes to set up later non-infringing sales that will compete with MKS products abroad. The fact that NPP admits its plans to recall its products before trial, after the damage is done, underscores the need for the expedited relief sought here. If this testing is completed, even in the next 10 days pending a preliminary injunction hearing, MKS may lose a meaningful way to obtain redress.

**I.    Experimental Use in the United States Is Infringement.**

NPP's opposition brief fundamentally misstates the law, when NPP argues it can test an infringing product in the United States with impunity as long as it removes the product from the U.S. before selling it or trial, if the final sale of that product is beyond the reach of U.S. patent law. (*See* Docket No. 25 (Cho Declaration) at ¶ 9 ("I understand that removal of the samples ends any question of infringing activity in the U.S.").)

In fact, there is no question that experimental infringing use in the United States – like that NPP concedes is ocurring – *is* patent infringement:

1

> It is well-established, in particular, that the *use* of a patented invention, without either manufacture or sale, is actionable. … [Defendant] may intend to perform 'experiments,' but unlicensed experiments conducted with a view to the adaption of the patented invention to the experimentor's business is a violation of the rights of the patentee to exclude others from using his patented invention.

*Roche Products, Inc. v. Bolar Pharmaceutical Co., Inc.*, 733 F.2d 858, 861, 863 (Fed. Cir. 1984) (finding that a drug company's experimentation with a patented material is patent infringement, even if the company had no plans to sell the patented material during the term of the patent) (attached as Appendix 1 hereto for the Court's convenience).

The Federal Circuit's decision in *Roche Products v. Bolar Pharmaceutical Co.* is particularly instructive here. In *Roche*, as here, the defendant admitted to using an infringing item. The defendant's sole defense was that it would not sell the product while the patent was still in force, and the defendant claimed it would not sell its product undergoing the experimentation until the patent expired. Here, NPP argues it will sell only outside the United States the product undergoing experimentation. The Federal Circuit held that infringement is infringement, and left to the district court determination of an appropriate remedy. *Id.* at 865 ("Since we hold that there is infringement, Roche is entitled to a remedy. We are not in the position, however, to decide the form of that remedy . . . . The trial court thus has considerable discretion in determining whether the facts of a situation require it to issue an injunction. The scope of relief, therefore, is not for us to decide in the first instance . . . .").

## II.     This is Precisely the Type of Case That Warrants Immediate Injunctive Relief.

NPP's argument in its opposition underscores why this is precisely the type of case in which both a temporary restraining order and preliminary injunction are warranted *and* necessary.

As to likelihood of success, NPP does not question the validity or infringement of the patent, despite having known about MKS's allegations for two months. As to irreparable harm, NPP admits that these accused products are *now* in use at MKS's biggest customer's U.S. facilities and does not dispute that the purpose of this use is to allow NPP to make sales later beyond the reach of the patent. (Dkt. No. 25 (Cho Decl.), ¶ 5 ("The experimental use and evaluation occurred in some of Applied Materials' U.S. facilities.")) Finally, as to urgency, NPP does not dispute that

2

**MKS'S REPLY IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND TO SET SHOW CAUSE HEARING RE: PRELIMINARY INJUNCTION**
Case No. C 09-02297

the qualification process is ongoing, or that the testing will be complete before this case reaches resolution on the merits.  Instead, NPP argues that as long as NPP removes the products at the conclusion of that testing, NPP will avoid liability and MKS should be forced to suffer the consequences.

Indeed, NPP goes so far as to say that "[i]f MKS loses market share in countries where it has no patent protection, that is merely a reality of international business and is not a consequence of patent infringement."  (Dkt. No. 24, p.4.)  Of course, that potential harm to MKS that NPP concedes is possible would be a *direct* result of NPP's infringing activities currently underway in the United States, and the "reality" of the situation is that NPP is liable for such infringement under the U.S. patent laws.  As the Federal Circuit decided in *Roche*, it matters not whether the intended sales of the product at issue would be beyond the scope of U.S. patent laws – that the *use* is occurring in the United States during the term of the patent is enough to support a finding of infringement where that use is intended for later business purposes.  *See Roche*, 722 F.2d at 863 ("tests, demonstrations, and experiments which are in keeping with the legitimate business of the alleged infringer are infringements for which experimental use is not a defense.") (internal quotation marks and citations omitted).

These facts – either conceded by NPP or not challenged and therefore to be accepted for purposes of this motion – underscore the need for immediate relief, as it remains undisputed that NPP intends to complete its qualification process at MKS's largest customer before this case reaches resolution on the merits, and then intends to remove the accused devices involved in such infringing use from the country.

NPP's argument that it "has not received any prior indication that this matter was an emergency" surely rings hollow, because the record itself shows that MKS has made the urgency of this matter clear to NPP throughout their correspondence on this matter to date.  (Dkt. No. 25 (Cho Decl.), ¶ 12; *see* (Dkt. No. 7 (Mottley Declaration) & Exs. 6 (April 22, 2009 letter demanding that NPP "immediately cease and desist" from its ongoing infringing activities, and immediately recall devices from the United States), 8 (May 26, 2009 letter sent Monday after

3

**MKS'S REPLY IN SUPPORT OF MOTION FOR TEMPORARY RESTRAINING ORDER AND TO SET SHOW CAUSE HEARING RE: PRELIMINARY INJUNCTION**
Case No. C 09-02297

1  Friday filing of complaint, informing NPP of the filing and MKS's intention to seek expedited
2  discovery), 10 (May 28, 2009 letter requesting confirmation that NPP's claimed product recall
3  would be complete no later than June 5, 2009), 12 (June 1, 2009 letter reinforcing that "this matter
4  is of urgent concern to MKS" and requiring a response by June 5, 2009), and 14 (June 8, 2009
5  letter reinforcing the "importance of this matter to MKS").)
6        Indeed, the only basis NPP advances to suggest a lack of urgency here is that MKS did not
7  file the present motion sooner.  In making this argument, however, NPP does not address the fact
8  that MKS took NPP at its word when NPP said on May 28 that "products in U.S., if any, will be
9  recalled." (*See* Dkt. No. 7, Ex. 9.)  Yet, when MKS then sought confirmation that this recall
10 process was underway, trying to avoid the need to burden this Court with unnecessary motion
11 practice if NPP had truly meant what it said, it was met with delay by NPP. (*See* Dkt. No. 7, Exs.
12 10 through 14.)  It was only on June 12, 2009, after NPP said that the "recall" would not take
13 place immediately and put MKS on notice that NPP had no intention of ceasing the qualification
14 process at MKS's biggest customer, that the need for this filing was clear. (*See* Dkt. No. 7, Ex.
15 15.)  MKS filed the present Motion two business days later.
16 **III.    Formal Service of Process is Not Required for Preliminary Injunctive Relief.**
17       Finally, as to NPP's argument that the complaint has not yet been formally served, the law
18 is clear that this Court can enter both temporary restraining orders and preliminary injunctive relief
19 prior to formal service of the summons and complaint in this matter.  FED. R. CIV. P. 65(a)(1) &
20 (b)(1) (no notice required to issue a temporary restraining order, and only notice (not service)
21 required to issue a preliminary injunction); *see Corrigan Dispatch Co. v. Casa Guzman, S.A.*, 569
22 F.2d 300, 302 (5th Cir. 1987) ("Rule 65(a) does not require service of process."); *Heil v. Wells*
23 *Fargo Bank*, No. C06-02002 MJJ, 2006 WL 1320301, at *2, *4 (N.D. Cal. May 3, 2006) (granting
24 preliminary injunction without service of process).  Rather, only notice is required in order for a
25 preliminary injunction to issue, and not even that is required for issuance of a temporary
26 restraining order.  There can be no dispute here that NPP had sufficient notice to meet these
27
28

1  requirements. (*See* Docket Nos. 9 & 14 (Mottley Declarations of Service of MKS's Motion, and
2  this Court's Order Setting Briefing Schedule and Hearing on that Motion).)
3      While MKS is working diligently to effect formal service of the summons and complaint
4  on NPP (a Korean company) through the Hague Convention, the process can take approximately
5  two to three months to complete, including translation of the documents required for service on
6  NPP, after which MKS must send those documents to the Ministry of Court Administration in
7  Seoul, which then will send them to the Korean court for service.
8      It simply is not the law that a foreign defendant who must be served through such
9  procedures is not subject to injunctive relief for ongoing infringing activity before such formal
10 service can be completed.

DATED: June 22, 2009

Christopher D. Sullivan
MCGRANE GREENFIELD, LLP

Tanya L. Forsheit
Steven M. Bauer*
Kimberly A. Mottley*
PROSKAUER ROSE LLP

*admitted *pro hac vice*

/s/
Tanya L. Forsheit

Attorneys for Plaintiff
MKS INSTRUMENTS, INC.